UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **REPORT** |
| | **and** |
| v. | **RECOMMENDATION** |
| BO LAM, | |
| HUNG THE NGUYEN, and | |
| TUYEN TRAN, | **05-CR-104S(F)** |
| Defendants. | |

APPEARANCES:            TERRANCE P. FLYNN
                        UNITED STATES ATTORNEY
                        Attorney for the Government
                        JOSEPH J. KARASZEWSKI
                        Assistant United States Attorney, of Counsel
                        Federal Centre
                        138 Delaware Avenue
                        Buffalo, New York   14202

                        ALAN D. GOLDSTEIN, ESQ. & ASSOCIATES
                        Attorneys for Defendant Bo Lam
                        Alan D. Goldstein, of Counsel
                        42 Delaware Avenue
                        Buffalo, New York    14202

                        ROBERT N. CONVISSAR, ESQ.
                        Attorney for Defendant Hung The Nguyen
                        112 Franklin Street
                        Buffalo, New York   14202

                        JOSEPH M. LaTONA, ESQ.
                        Attorney for Defendant Tuyen Tran
                        716 Brisbane Building
                        403 Main Street
                        Buffalo, New York   14203

## JURISDICTION

This proceeding was referred to the undersigned for all pretrial matters pursuant

to 28 U.S.C. § 636(b)(1)(A) & (B) by Hon. William M. Skretny on July 19, 2005 (Doc. No.

22).  It is presently before the court on Defendant Tran's motion, filed June 30, 2005

(Doc. No. 14) seeking suppression of evidence, including Defendant's post-arrest

statements ("Defendant's Motion").

## BACKGROUND[1]

Following Defendants' arrest and preliminary proceedings, Defendants were

charged is a single count Indictment with a violation of 21 U.S.C. § 846.  Following

Defendants' arraignments on April 19 ("Nguyen") and May 10, 2005 ("Lam" and "Tran"),

Lam and Tran filed omnibus motions, on June 30, 2005 (Doc. No. 14) (Lam), July 1,

2005 (Doc. No. 16) (Tran), and on July 5, 2005 (Doc. No. 17) (Lam), respectively ("the

Omnibus Motions"), in accordance with the Scheduling Order for the case, filed June 7,

2005 (Doc. No. 13).  No motions have been filed on behalf of Defendant Nguyen.  Lam

and Nguyen were detained following their initial appearances on November 23, 2004

and remain in custody; Tran was released on bail.

Oral argument on the Omnibus Motions was conducted July 28, 2005, and Lam's

and Tran's non-dispositive motions were denied in part and granted in part.  (Doc. No.

25).  As both Lam and Tran moved for suppression of evidence based on statements

obtained from Tran and the execution of a search warrant directed to Tran's cell phone

seized incidental to her arrest, an evidentiary hearing was scheduled.  However,

because Lam conceded at oral argument on the Omnibus Motions that he lacked

standing to suppress such evidence, Lam did not participate in the subsequent

---

[1] Taken from the papers filed and the prior proceedings conducted in this matter.

2

evidentiary hearings conducted before the undersigned on October 27, 2005 and

January 3, 2006 in connection with Defendant's instant motion.

Tran filed a Memorandum in Support of Defendant's Suppression Motion on

March 21, 2006 (Doc. No. 32) ("Defendant's Memorandum").  The Government's

Memorandum of Law in Opposition was filed April 14, 2006 (Doc. No. 34)

("Government's Response").[2]  Oral argument was deemed unnecessary.


## FACTS[3]

At the October 27, 2005 hearing, the Government presented the testimony of

Special Agent Robert R. Johnston, Bureau of Immigration and Custom Enforcement,

Department of Homeland Security.  (T1 at  7).  At the January 3, 2006 hearing, the

Government presented the testimony of Special Agent Karen Noworyta.  (T2 at 82).

Tran did not present any witnesses and did not testify.  Based on the agents' credible

testimony, Tran's arrest and interrogation resulted from the following facts.[4]

On November 22, 2004, at approximately 10:15 p.m., an individual attempted

entry into the United States from Canada in a tractor-trailer at the Peace Bridge Port of

Entry. (T1 at 10).  During secondary inspection of the tractor-trailer, 10 cardboard

boxes, containing a total of approximately 270 pounds of suspected marijuana, were

---

[2] In her Omnibus Motion, Tran asserted that her *Miranda* waiver to post-arrest questioning was ineffective on the ground she could not understand English.  Doc. No. 14 at 13-16.  However, neither at the hearing nor in Defendant's Memorandum is this claim further argued; accordingly, the court finds Defendant has abandoned it.

[3] Taken from the pleadings and papers filed in this proceeding.  "T1 at __" refers to pages in the transcript of the October 27, 2005 hearing; "T2 at __" refers to pages in the transcript of the hearing conducted January 3, 2006.

[4] The court adopts the Statement of Facts presented in the Government's Response at 2-6.

discovered in the rear of the trailer, hidden within the legitimate cargo of household flour. (T1 at 11-13; 26-27).

The driver of the tractor-trailer was arrested and gave a voluntary statement to agents of U.S. Immigration and Customs Enforcement ("ICE"), admitting that he and another individual had loaded the boxes of marijuana onto the trailer in Canada. (T1 at 14-15). The driver

further stated that after clearing U.S. Customs, he was to make two telephone calls and make arrangements to meet individuals at Exits 46 and 52E off the New York State Thruway, within this district, to deliver the marijuana.  (T1 at 16). Five boxes were to be delivered to Exit 52E and five to Exit 46. (*Id*.)

The driver (hereinafter, the "truck driver" or "CI") then agreed to cooperate with ICE and attempted to arrange a controlled delivery of the marijuana. (T1 at 17). When he was arrested, the CI possessed a piece of paper which had the names "Bo" and "Tan" written on it, with telephone numbers for each. (T1 at 18). Under the supervision of ICE agents, the CI placed a call to the number corresponding with "Bo" and had a conversation with "Bo." (T1 at 21). Bo advised that he was still 70 miles away, and Bo and the truck driver made arrangements to meet at Exit 52E. (T1 at 21-22). The CI also placed a call to the individual identified as "Tan" and they made arrangements to meet at Exit 46. (T1 at 22).

The CI, accompanied and surveilled by ICE agents, drove the tractor-trailer to a truck stop on Walden Avenue, off Exit 52E. (T1 at 23). The CI parked the tractor-trailer in the parking lot, and agents established surveillance at approximately 3:45 a.m. on November 23, 2004. (T1 at 29). The CI placed another call to Bo and told him that he

4

would be located in the parking lot and the truck's flashing lights would be on. (T1 at 30).  At approximately 4:15 a.m., a Mercury Mountaineer, an SUV ("the SUV"), bearing Illinois license plates, pulled into the parking lot, proceeded to the gas pumps, and an Asian male driving the vehicle got out and pumped gas. (T1 at 33).  After returning to the SUV, the driver circled the parking lot, exited the lot, and drove across Walden Avenue to the parking lot of a hotel located across the road. (T1 at 34).

Thereafter, the CI received a call on his cellular telephone from an individual who was calling from Canada. (T1 at 34-35). The individual told the CI that Bo had seen something in the parking lot, *i.e.*, the rendezvous, he did not like, and that he was concerned about police being present. (T1 at 35-36).

At approximately 5:15 a.m., at the direction of ICE agents, the CI placed a telephone call to the individual in Canada and told him that he was not going to wait any longer and will leave if Bo does not come to meet him as planned. (T1 at 37).

Shortly thereafter, the SUV reappeared from the hotel parking lot, re-entered the truck stop, and backed up to the rear of the tractor-trailer. The driver exited the SUV, went to the back of the SUV, opened the back hatch, and then proceeded to the side of the tractor-trailer, where he met with the CI. (T1 at 38). The driver and the CI then moved back to the rear of the tractor-trailer and opened the rear doors of the trailer. (*Id*.).  At that time, ICE agents converged and arrested Lam, the driver of the SUV, Nguyen, the front seat passenger, and Defendant Tran, who was in the back seat. (T1 at 38-44).

ICE Agents found a backpack and a shopping bag on the floor boards on the passenger side of the front seat and another shopping bag in the back seat, all of which

contained bundles of U.S. currency. (T1 at 54-55; 60).

After having been taken into custody, Tran was advised of her *Miranda* rights to remain silent and her right to an attorney.  (T2 at 90-91).   Tran waived her rights and agreed to give a statement. (T2 at 90-93; 95). Tran stated to ICE and DEA agents that Lam had asked her to help him count the money that was found in the vehicle, and that she had counted exactly $200,000.  (T2 at 105).   Tran also stated that she knew the money was illegal and when she asked Lam how he got the money he became angry and told her not to ask any questions. (T2 at 105).   Tran claimed she believed Lam was to pick something up or "buy something" in the parking lot.  *Id.*

Subsequent to Defendants' arrests, ICE Special Agent Robert R. Johnston applied for and obtained warrants from the Hon. H. Kenneth Schroeder, a U.S. Magistrate Judge of this district, authorizing the search of six cellular telephones, including a Samsung cell phone belonging to Tran, seized from Defendants and the SUV incident to their arrests.  Exhibit B to Tran's Omnibus Motion.

## DISCUSSION

Tran contends that as her warrantless arrest was without probable cause, neither her statements obtained following her waiver of *Miranda* rights nor the information obtained from her cellular telephone, pursuant to the search warrant issued by Judge Schroeder, are admissible.  Defendants' Memorandum at 6-8.  Tran specifically relies upon *Dunaway v. New York*, 442 U.S. 200 (1979) which held that statements obtained as a result of custodial interrogation without probable cause should be suppressed as the fruits of police exploitation of an initial illegality, a seizure without probable cause or

reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1 (1968).  Tran further maintains

that as the search warrant directed to her cell phone was based upon her warrantless

arrest, the fruits of the cell phone search must also be suppressed in the absence of

any attenuation of the primary illegality, *i.e.*, Trans' warrantless arrest without probable

cause, under the fruit of the poisonous tree doctrine enunciated in *Wong Sun v. United*

*States*, 371 U.S. 471, 484-86  (1963).  Defendant's Memorandum at 7.  Tran further

contends that, as the search warrant was issued upon Agent Johnston's asserted

experience that cell phones used by narcotics traffickers contain evidence and there

was no independent basis to search her cell phone, the evidence obtained from such

search must also be suppressed.  Defendant's Memorandum at 8.  Because the record

amply demonstrates Tran's arrest was based upon probable cause and that there was

probable cause to search her cell phone, Tran's arguments fail.

As the uncontradicted testimony shows, investigators detected a large quantity of

marijuana being smuggled into the United States on a truck from Canada.  The truck

driver cooperated with the investigators and the investigators accompanied the truck to

the rendezvous point as disclosed by the truck driver.  While listening to telephone

conversations between a person, who was driving toward the rendezvous point from

some distance away, and the truck driver, the agents ascertained that this person

intended to meet the truck to pick up one-half of the load of marijuana as the truck driver

had informed investigators earlier that night.  Upon arrival of the SUV, in which Tran

was a passenger, at the delivery point, investigators also overheard the driver of the

SUV, Lam, inform the Canadian person who had directed the truck driver and helped

load the marijuana, that Lam suspected possible law enforcement surveillance, and

observed the SUV being furtively parked in a nearby location.  However, at the investigators' direction, the truck driver told his Canadian contact to inform the SUV's driver by telephone to pickup the marijuana in the truck or he, the truck driver, would depart with the marijuana.  Shortly thereafter, the SUV returned to the parking lot where the truck was located, and parked next to the truck in a position to conveniently allow a physical transfer of goods from the truck to the SUV.  At that point, Tran, Lam and Nguyen were arrested.

Probable cause exists when reasonably reliable information sufficiently causes a person of reasonable prudence to conclude that criminality is afoot.  *Illinois v. Gates,* 462 U.S. 213, 232 (1983); *United States v. Marin*, 669 F.2d 73, 81 (2d Cir. 1982).  The facts presented are to be evaluated in a common sense manner, *Gates, supra,* at 238.  Warrantless arrests are permissible where an officer has probable cause to believe a crime has been committed in his presence.  *United States v. Watson*, 423 U.S. 411, 418 (1976).  In this case, not only did the federal agents have first-hand information based on the truck driver's admission and cooperation, in conjunction with their discovery of the marijuana, that a conspiracy to effect smuggling of the contraband had been attempted but, significantly, the SUV's arrival at the designated rendezvous and the overheard telephone communications between the SUV's driver and the truck driver fully corroborated the accuracy of the truck driver's stated instructions to meet the co-conspirators who were to receive the marijuana at the rendezvous of which the agents had been informed.  Taken together with the furtive actions of the SUV following its arrival at the parking lot and its immediate compliance with the truck driver's ultimatum to take delivery of the marijuana, relayed by telephone from the truck driver to the SUV,

the agents were not mistaken in concluding that the SUV occupants were there to take delivery of the marijuana.  Rather, facts as observed by the agents established probable cause to believe the SUV and its occupants were involved in the marijuana smuggling conspiracy as had been described by the truck driver.  Thus, because Tran's arrest was based on probable cause, the threshold requirement for suppression predicated on *Dunaway, supra*, is absent in this case.  *See, e.g., United States v. Ceballos,* 812 F.2d 42, 49-50 (2d Cir. 1987) (warrantless custodial interrogation without probable cause requires suppression of subsequent statements under *Dunaway*).  Defendant does not contend her arrest statements were involuntary.

There is no merit in Defendant's argument that her presence in the SUV alone fails to establish probable cause.  It is well-established that observed voluntary association with drug trafficking activity is sufficient to sustain a finding of probable cause.  *See United States v. Montana*, 958 F.2d 516, 519 (2d Cir. 1992) (probable cause existed to arrest defendant who accompanied co-defendant and conversed with co-defendant while co-defendant picked up package of cocaine); *United States v. Patrick*, 899 F.2d 169, 171-72 (2d Cir. 1990) (discovery of narcotics in co-defendant's purse establishing probable cause to arrest defendant who was traveling with the co-defendant); *United States v. Tramunti*, 513 F.2d 1087, 1103-104 (2d Cir. 1975) (probable cause existed to arrest defendant who was passenger in a car driven by a "major drug trafficker" driving from residence where officers had reason to believe a narcotics transaction occurred).

The commonsense adage ",birds of feather flock together," applies to the instant facts.  At the point Tran was arrested, the agents knew the SUV had been driven a long

distance for the purpose of taking delivery, as a prearranged place and time, of a large amount of smuggled marijuana.  Whether Tran was, in fact, an active and knowing co-conspirator is not the issue on the instant motion; rather, the question is whether the agents had probable cause to believe Tran was involved in the underlying criminality. Based on the totality of the undisputed facts leading to her arrest, there was nothing to suggest that Tran was merely an innocent visitor to the area who had made a bad choice of traveling companions.  Accordingly, the Government has fully satisfied its burden to establish that Tran's warrantless arrest was based upon probable cause. *United States v. Pena*, 961 F.2d 333, 338 (2d Cir. 1992).

Tran's remaining contention that the Government cannot show there was probable cause directed to Tran's cell phone, sufficient to support issuance of the search warrant to search the phone's digitally stored information, is equally without merit.  In his application for the search warrant, Agent Johnston recited the events leading to Tran's arrest and stated his belief, based on his experience as a narcotics investigator, that drug traffickers frequently store relevant information in their cellular phones.  Exhibit B to Defendant's Omnibus Motion ¶ 9.  Contrary to Tran's argument that Agent Johnston's experience, as the sole support his belief that a drug smuggling co-conspirator's cell phone was likely to yield evidence of the crime, was an insufficient basis upon which to find probable cause, the experience of narcotics investigators has been accepted as the basis to support such cell phone searches.  *See United States v. Gaskin*, 364 F.3d 438, 457-58 (2d Cir. 2004) (sustaining seizure of cell phones in connection with warrantless searches for, *inter alia*, narcotics trafficker's cell phones based on agent's experience); *United States v. Black*, 2004 WL 3091175 * 6-7 (Report

and Recommendation) (W.D.Wisc. 2004), adopted, (slip op. Jan. 21, 2005, 04-CR-162S) (Shabaz, D.J.) (probable cause for search warrant directed to contents of drug trafficker's cell phone sustained based on agent's experience that drug trafficker's cell phones contain relevant evidence); *see also United States v. Benevento*, 836 F.2d 60, 70-71 (2d Cir. 1987) (recognizing narcotics agent's experience is relevant to probable cause determination for issuance of search warrant) (citing *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985) (agent's experience that narcotics traffickers maintain records in their homes supports search warrant for residence even absent probable cause to believe particular defendant's house contains contraband)).

Additionally, as noted, Agent Johnston's experience with the use of cell phones, and as a means to retaining evidence of narcotics activities, by narcotics traffickers was not the only information upon which the warrant was issued.  Judge Schroeder was also made aware from Agent Johnston's thorough recounting of the entire investigatory scenario leading to Defendants' arrests that incriminating telephonic communications to the truck driver and the Canadian contact had emanated from the SUV while it was on route to the rendezvous.  Application for Search Warrant, Exhibit B to Defendant's Omnibus Motion ¶¶ 1-8.  Common sense allowed Judge Schroeder to reasonably conclude that one or more of the six cell phones located in the SUV, including Tran's, had facilitated such on-going communications with the cooperating truck driver and the Canadian coordinator of the smuggling conspiracy.  Thus, nothing in this record supports Tran's assertion that the warrant was issued solely upon Agent Johnston's experience regarding the use of cell phones by drug traffickers.   In any event, the agent's good faith reliance upon the search warrant requires that Tran's challenge be

rejected.  *See United States v. Leon*, 468 U.S. 897, 920-22 (1984).  Significantly, Tran

fails to point out any reason why the *Leon* good faith exception would be inapplicable to

Judge Schroeder's search warrant.


## CONCLUSION

Based on the foregoing, Defendant's motion, Doc. No. 14, should be DENIED.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: May 23, 2006
         Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Government and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    May 23, 2006
          Buffalo, New York